## AFFIDAVIT OF MATTHEW H. O'SHAUGHNESSY

I, Matthew H. O'Shaughnessy, being duly sworn, do state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). I have been an ATF Special Agent for approximately five years, and during that time I have been involved in numerous investigations of violations of federal firearms and controlled substances laws. Currently, my responsibilities include working with other federal, state, and local police departments to investigate and prosecute violations of federal firearms, explosives, and controlled substances laws.

2. Based on my training and experience as an ATF Special Agent, I am familiar with federal firearms laws and know that it is a violation of 18 U.S.C. 922(g)(1) for any person who has been previously convicted of a felony, that is, a criminal offense punishable by imprisonment for a term of more than one year, to possess a firearm and/or ammunition that has traveled in interstate commerce.

3. Having so stated, I submit this affidavit in support of a complaint charging and individual named Edward LANGEVIN with unlawful possession of several firearms in violation of the statute. The facts stated herein are based upon my own personal involvement in this investigation and my discussions with other law enforcement officers involved in this investigation. In submitting this affidavit, however, I have not included each and

every fact known to me about the investigation, but only those facts that I believe are sufficient to establish the requisite probable cause to believe that LANGEVIN has violated the statute.

4. On April 12, 2004, a Massachusetts State Police (MSP) Trooper found a loaded firearm on the side of the road in Richmond, Massachusetts, a town on the New York border. The firearm is a .45 caliber Heckler and Koch firearm, serial number 2500903. By virtue of the serial number, officers were able to determine that the firearm had been purchased by a man named Anthony Cegelis, of 171 Pleasant Street in North Andover.

5. On April 13, 2004, I and Trooper Steve Gondella went to that residence and interviewed the resident, a woman named Joyce Cegelis. Ms. Cegelis stated that Anthony Cegelis was her husband, and that he died of a heart attack in 2002. Ms. Cegelis stated that her husband did in fact have a license to own firearms, and possessed seven of them to the best of her recollection. Ms. Cegelis stated that he always kept the firearms in their bedroom and she believed they were all still there. At our request, Ms. Cegelis consented to a search of the bedroom, where we hoped to locate the remaining six firearms. However, no firearms were discovered during the search. Instead, officers found under the bed a hypodermic needle and several bags of heroin. Ms. Cegelis stated that she did not know who the heroin belonged to.

6. We were aware that LANGEVIN is Ms. Cegelis's nephew and has a long history involving drug use. We asked her whether he had ever stayed at the residence. Ms. Cegelis stated that he had lived there with her until February 17, 2004. Ms. Cegelis claimed that LANGEVIN had moved out on that day after being involved in a hit and run accident with her car, and that she had not seen him since then. However, on April 15, 2004, we interviewed LANGEVIN's daughter, Nicole Knight, at her New Hampshire residence. Ms. Knight stated that she had seen her father approximately two week earlier at Ms. Cegelis's apartment. Ms. Knight further stated that her father had called her cell phone several times the day before and left messages for her to call him. Ms. Knight has "Caller ID" and it indicated that LANGEVIN had called her from the home of an individual named Jack O'Keefe, of 7 Brookline Street, in Lawrence.

7. On April 16, 2004, officers from ATF, the MSP and the Essex County Sheriff's Office interviewed Mr. O'Keefe at his residence. Among other things, he stated that LANGEVIN had come to his house on April 14th and asked to spend the night because he and Ms. Cegelis were arguing. He stated that after LANGEVIN left at some point to use a payphone, Ms. Cegelis came to the residence at approximately 7:30 p.m. and told him that the police were looking for LANGEVIN and that he should not let LANGEVIN stay there. According to Mr. O'Keefe, Ms. Cegelis returned later

that evening in her car and picked up LANGEVIN.

8. Based on this information, we re-interviewed Ms. Cegelis later in the day on April 16th, this time advising her of her Miranda rights. Ms. Cegelis admitted that she had lied to the officers to protect LANGEVIN. She admitted that LANGEVIN had spent the night there and she had dropped him off just that morning in the area of Prospect Street in Lawrence. Ms. Cegelis stated that she asked LANGEVIN if he had stolen any of her deceased husband's guns and he stated, "Auntie I took the guns for money to pay for drugs." According to Ms. Cegelis, LANGEVIN stated that he knew where the guns were and was planning to contact the Lawrence Police to return them. Ms. Cegelis stated that she gave LANGEVIN $125.00 which he said he needed to pay for drug treatment. Ms. Cegelis further stated that LANGEVIN has a long history of asking her for money, and has stolen things from her in the past.

9. On April 26, 2004, I and other officers placed Ms. Cegelis under surveillance. At approximately 4:15 p.m., she left her workplace in Lawrence and drove to the corner of Berkley and Jackson Streets. LANGEVIN was waiting there and got into the car. At some point shortly thereafter, Ms. Cegelis apparently became aware of the surveillance and began driving so erratically in an effort to elude them that Lawrence Police officers following them made a traffic stop. During their approach to the

car, the officers observed LANGEVIN leaning towards the floorboard. Fearing for their safety, officers asked LANGEVIN to step out of the car so they could conduct a pat-frisk. Trooper Gondella participated in the pat-frisk and felt a few straight objects in LANGEVIN's sock which turned out to be hypodermic needles. Gondella also found on the front seat an empty cigarette pack with heroin packets and a razor blade.

10. After being placed under arrest and advised of his Miranda rights, LANGEVIN agreed to talk with the officers. LANGEVIN admitted that he stole 6 guns from his aunt's home. LANGEVIN cryptically stated that he had access to the guns but did not want to disclose any further information until he spoke with an attorney.

11. I am aware that officers have to date recovered at least five firearms that the deceased Mr. Cegelis had owned. In addition to the firearm recovered in Richmond, we have recovered four more firearms in the immediate area between mid-June and the present. In each case, a trace of the serial number showed the firearm had been purchased in the past by Anthony Cegelis. These include the following:

> a. a Heckler and Koch 12 gauge shotgun bearing serial number M22798, and a Heckler and Koch .308 caliber, model 91 rifle, bearing serial number A029074, both recovered on June 16, 2004 from a

      licensed dealer called Aardvark Firearms of 189 Carlton Lane, North Andover, to whom LANGEVIN sold the weapons on August 26, 2003 for $1,000 in cash;

b.    a Para Ordinance .45 caliber pistol bearing serial number QM3441, recovered from a crime scene by Lawrence Police on July 14, 2004; and

c.    a Browning, .22 caliber Buck Mark pistol, bearing serial number 655NV25034, recovered on September 17, 2004 from a licensed dealer called A.G. Guns of Lowell, to whom LANGEVIN sold the firearm for $250.00.

12.    I am aware that ATF S.A. Angelo Thurman has reviewed the information surrounding each of the firearms and has concluded that each of the firearms at issue was manufactured outside Massachusetts and therefore crossed a state line prior to being recovered.

13.    I have reviewed LANGEVIN's criminal record as maintained by the Massachusetts Criminal History Systems Board. It reveals, among other things, that LANGEVIN was convicted in 1996 in the Lawrence district court of the felony offense of possession of heroin.

14.    Based on the foregoing, I have probable cause to believe that, from on or about August 26, 2003, to on or about September 17, 2004, LANGEVIN, having been previously convicted of

a crime punishable by a term of imprisonment exceeding one year, did posses, in and affecting commerce, firearms in violation of Title 18, United States Code, Section 922(g)(1).

---
MATTHEW H. O'SHAUGHNESSY
Special Agent, Bureau of
Alcohol, Tobacco and Firearms

Sworn and subscribed to before me this 22 day of September, 2004.

---
JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE